UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| TAHOE CABIN, LLC, a Nevada limited liability company; TAHIZZLE, LLC, a Nevada limited liability company; and PATRICK K. WILLIS, TRUSTEE OF THE PATRICK K. WILLIS FAMILY TRUST DATED MARCH 28, 2000,<br><br>    Plaintiffs,<br><br>vs.<br><br>FEDERAL HIGHWAY ADMINISTRATION an agency of the United States Department of Transportation; AMY S. FOX, Division Director, Central Federal Lands Highway Division, in her official capacity; RYAN MATHIS, Central Federal Lands Highway Division, in his official capacity; and DOES 1-25,<br>    Defendants. | Case No. 3:22-cv-00175-RCJ-CSD<br><br>**ORDER** |

Plaintiff Tahoe Cabin, LLC, a Nevada Limited Liability Company; Tahizzle, LLC, a Nevada Limited Liability Company; and Patrick K. Willis, Trustee of the Patrick K. Willis Family Trust dated March 28, 2000 (collectively, "Plaintiffs"), bring a cause of action against Defendant Federal Highway Administration, an agency of the U.S. Department of Transportation; Amy S.

Fox, Division Director, Central Federal Lands Highway Division ("CFLHD"), in her official capacity; and Ryan Mathis, CFLHD, in his official capacity (collectively, "the government"), for allegedly violating the National Environmental Protection Act ("NEPA").[1] 5 U.S.C. §§ 701-706; 23 U.S.C. § 139(k)-(l). Before this Court is the government's Motion to Dismiss, which alleges that Plaintiffs did not bring their action within the statute of limitations. (ECF No. 50). The Court agrees with the government and grants the Motion to Dismiss. *Id*.

## FACTUAL BACKGROUND

This action concerns the government's construction of a new access road to a beach and Plaintiffs' desire to maintain an existing access road to their neighborhood. Plaintiffs live on Sierra Sunset Lane off US Highway 50 in Lake Tahoe, Nevada, adjacent to Round Hill Pines Beach Club (the "Beach Club"). (ECF No. 45 at 2). In fact, Plaintiffs' property and the Beach Club are roughly 1,600 feet from each other. (*Id*.) Plaintiffs' property and the Beach Club are only accessible from US Highway 50. (ECF No. 13 at 4). The Beach Club services many visitors each year and wishes to expand its operations. (ECF No. 45 at 2). In an effort to increase the driver safety for those entering and exiting the Beach Club, the government developed the US Highway 50 Round Hill Pines Access Project (the "Project"). (ECF No. 16 at 7).

The current entrance and exit for the Beach Club "has safety concerns due to limited sight distance for vehicles traveling in both directions along US [Highway] 50." (*Id*. at 221). Additionally, the government developed the Project in response to the growth in expected visitors to the Beach Club. (ECF No. 45 at 7). For these reasons, the Project included plans to relocate the Beach Club's entrance, add an access road to the Beach Club, and improve a segment of US

---

[1] While the original complaint included additional defendants, these are the only defendants remaining. (ECF No. 1.)

Highway 50 adjacent to the Beach Club. (ECF No. 1 at 37). However, the Beach Club's new entrance is located within 600 feet of Sierra Sunset Lane, which is at issue in this matter. (ECF No. 45 at 12).

The government distributed a newsletter to adjacent landowners, public agencies, and community groups starting in March 2019 and ending sometime in September of the same year to inform the public of the Project. (ECF No. 16 at 8-9; ECF No. 45 at 8.) The government provided the public with an opportunity to review and discuss the Project in person at a public meeting on April 23, 2019. (ECF No. 16 at 8). The public then discussed the Project with the government at a public meeting on September 25, 2019. (*Id.*) At both meetings, the public provided the government with comments and asked the government questions about the Project. (*Id.*)

While these public meetings occurred, Plaintiffs "strenuously voiced their safety concerns both in writing and orally based on the fact that, while the Beach Club's access point did need to be updated," Plaintiffs should not lose access to their homes. (ECF No. 45 at 8). The government met with Plaintiffs multiple times outside of the public meetings to hear Plaintiffs' concerns with the plans. (*Id.*) These meetings included guided walks of the proposed construction area, presentations on Plaintiffs' safety concerns, and discussions regarding a traffic study. (*Id.*) Plaintiffs hoped that the meetings would result in a traffic study and a change to the proposed construction, but the government made no promises that it would change the proposed construction. (*Id.*) The government did, however, promise that it would consider Plaintiffs' safety concerns and provide them with a copy of the Finding of No Significant Impact ("FONSI"), an agency action specifying whether the project impacts the environment. (ECF No. 54 at 3).

The government proceeded with the Project and conducted an Environmental Assessment (the "EA") to determine the Project's environmental impact and finalize the Project under the Administrative Procedure Act (the "APA"). (ECF No. 16 at 9.) Upon finding that the Project

created less than significant impacts to the environment, the government published a Notice in the Federal Register on October 18, 2021, advising the public that the government took final action pursuant to a FONSI for the Project. (*Id*. at 12.)

After considering Plaintiffs' safety concerns and publishing the FONSI, the government emailed Plaintiffs to inform them that it would not conduct a traffic study or change the proposed construction. (ECF No. 45 at 17). Plaintiffs state that it was clear at this moment that the government had no intention of changing the construction plan to accommodate Plaintiffs' safety concerns. (*Id*.) The only other option available to Plaintiffs was litigation. Under the APA, parties bringing an action to challenge a FONSI must do so within 150 days of publication in the Federal Register. 23 U.S.C. § 139(l). Unfortunately, the FONSI had been published for quite some time before Plaintiffs' received the government's email and Plaintiffs had not taken action. (ECF No. 54 at 14) (Plaintiffs received the email "mere days" before the "Judicial Review limitations expired on the FONSI"). Plaintiffs state that they were unaware of the FONSI because the government did not furnish it, as the government promised. (*Id*.) Plaintiffs also state that the government held meetings with Plaintiffs to run out the clock on the statute of limitations. (*Id*.) Regardless, Plaintiffs failed to file this action within the 150 days of publication in the Federal Register. (ECF No. 1).

The government filed its Motion to Dismiss under Fed. R. Civ. P. 12(b)(1), and this motion is the subject of this Order. (ECF No. 50.) The government argues that the Court does not have subject matter jurisdiction over the action because Plaintiffs failed to file the action within the statute of limitations. (*Id*.) Plaintiffs argue that the Court should disregard the statute of limitations because equitable estoppel or equitable tolling applies. (ECF No. 54 at 12-17). Beyond the balance of equities, Plaintiffs argue that the government waived the statute of limitations defense. (*Id*. at 10) Plaintiffs also allege that the government's Motion to Dismiss should be judged

as a motion to dismiss under Fed. R. Civ. P. 12(b)(6) because NEPA is subject to equitable tolling. (*Id*. at 9).

## LEGAL STANDARD

### A. Lack of Subject Matter Jurisdiction

Plaintiffs must prove that jurisdiction exists to survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(1). *Stock West, Inc. v. Confederated Tribes*, 873 F.2d 1221, 1225 (9th Cir.1989). "[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011) (internal quotation marks omitted) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)). A plaintiff satisfies Article III's requirements by showing that "(1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id*. at 1067.

There are two types of attacks defendants can use under Fed. R. Civ. P. 12(b)(1): facial and factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*. However, "in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction… In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Id*. In a factual attack, the court does not need to assume that the plaintiff's pleadings are true. *See id.*; *see also Rosales v. United States*, 824 F.2d 799, 803 (9th Cir.1987) ("no presumption of truthfulness attaches to the plaintiff's allegations").

### B. Failure to State a Claim

If the Court finds that Defendant's Fed. R. Civ. P. 12(b)(1) is improper, then the government's motion shall be construed as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Courts grant a motion to dismiss brought pursuant to Fed. R. Civ. P. 12(b)(6) when the cause of action fails to state a claim upon which relief can be granted. When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## ANALYSIS

Plaintiffs argue that dismissal is improper because equitable estoppel applies to the government's conduct, equitable tolling renders the statute of limitations moot, and the government waived the statute of limitations defense. The Court addresses each of these arguments in turn and finds that the statute of limitations bars Plaintiffs' action.

### A. Correct Standard

The Court will use the Fed. R. Civ. P. 12(b)(6) standard for the government's Motion to Dismiss. (ECF No. 50). The government argues that subject matter jurisdiction does not exist because Plaintiffs failed to file the action within the statute of limitations. (*Id.*) As Plaintiffs point out, a motion to dismiss based on lack of subject matter jurisdiction falls under Fed. R. Civ. P. 12(b)(1). But, as Plaintiffs correctly argue, "if a statute of limitations on a claim against the

1  government is subject to equitable tolling, the statute of limitations issue cannot be resolved on a
2  12(b)(1) motion." *Ramos v. United States*, No. C 01-21148-RS, 2002 WL 31466751, at *2 (N.D.
3  Cal. Nov. 1, 2002) (citing *Supermail Cargo v. United States*, 68 F.3d 1204 (9th Cir.1995)).

4  All actions are subject to a rebuttable presumption that equitable tolling applies unless
5  Congress provides otherwise. *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95 (1990)
6  (considering whether equitable tolling applied to an untimely claim brought against the
7  government and finding that "the same rebuttable presumption of equitable tolling applicable to
8  suits against private defendants should also apply to suits against the United States."). As a
9  shorthand rule, statutes that are "jurisdictional rule[s]" are not subject to equitable tolling and
10 statutes that are "claim-processing rule[s]" are subject to equitable tolling. *Kwai Fun Wong v.*
11 *Beebe*, 732 F.3d 1030, 1035 (9th Cir. 2013). However, "[f]iling deadlines ... are quintessential
12 claim-processing rules." *Id*. at 1037–38 (citations and quotations omitted).

13 Here, the filing deadline for the NEPA claim is a claim-processing rule subject to equitable
14 tolling. NEPA provides plaintiffs with a clear rule as to when they are required to file an action
15 against the government. 23 U.S.C. § 139(l) (a claim arising under NEPA "shall be barred unless it
16 is filed within 150 days after publication of a notice in the Federal Register."). Accordingly, the
17 Court will not construe the government's Motion to Dismiss as an action brought under Fed. R.
18 Civ. P 12(b)(1) because NEPA permits equitable tolling. *Id*. For that reason, the Court will consider
19 the government's motion under Fed. R. Civ. P. 12(b)(6).[2]

20 **B. Equitable Estoppel**

21

---

22 [2] "A motion to dismiss based on the running of the statute of limitations period may be granted
23 only if the assertions of the complaint, read with the required liberality, would not permit the
   plaintiff to prove that the statute was tolled. In fact, a complaint cannot be dismissed unless it
24 appears beyond doubt that the plaintiff can prove no set of facts that would establish the timeliness
   of the claim." *Supermail Cargo*, 68 F.3d at 1206–07.

Plaintiffs are not entitled to equitable estoppel because they cannot show that the government engaged in misconduct that dissuaded Plaintiffs from filing this action. "[E]quitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." *Stitt v. Williams*, 919 F.2d 516, 522-23 (9th Cir. 1990) ("This doctrine may be available when the defendant lulls the plaintiff into failing to bring suit."). Equitable estoppel "is based on the principle that a party should not be allowed to benefit from its own wrongdoing." *Estate of Amaro v. City of Oakland*, 653 F.3d 808, 813 (9th Cir. 2011) (citation and quotation omitted). "[T]he focus of the equitable estoppel analysis is . . . whether the defendant's fraudulent concealment or misrepresentation deprived the plaintiff of a full understanding of the true facts, and thus, dissuaded the plaintiff from filing the claim at issue within the limitations period." *Id.* Courts primarily focus on what conduct the defendant engaged in to prevent the plaintiff from filing suit. *Id.* In doing so, courts in this Circuit look at whether the plaintiff can show the following elements:

> (1) knowledge of the true facts by the party to be estopped, (2) intent to induce reliance or actions giving rise to a belief in that intent, (3) ignorance of the true facts by the relying party, and (4) detrimental reliance.

*Id.* (citing *Bolt v. United States*, 944 F.2d 603, 609 (9th Cir.1991)). However, in actions against the government, the plaintiff must show that the government engaged in "affirmative misconduct (not mere negligence)." *Id.* Further, plaintiff must show that, without equitable relief, "a serious injustice" exists that outweighs "the damage to the public interest of estopping the government." *Id.* The Court will apply Fed. R. Civ. P. 12(b)(6) to the facts that Plaintiffs plead for each of these elements to determine whether the government engaged in conduct that dissuaded Plaintiffs from filing suit.

1. *Knowledge*

The first element looks at whether defendants had knowledge of the wrongful conduct

giving rise to potential litigation. *See Bey v. City of Oakland*, No. 14-CV-01626-JSC, 2016 WL 1639372, at *10 (N.D. Cal. Apr. 26, 2016). Plaintiffs argue that the government knew it would not change the Project because the government went to the Tahoe Regional Planning Agency and the Nevada Department of Transportation for project approval while it was engaging with Plaintiffs over their safety concerns. (ECF No. 13). The government makes no argument to the contrary. Taking this allegation as true and reading it in favor of Plaintiffs, the government likely sought approval with full knowledge that it would not make any material changes. Because Plaintiffs argue that the government violated the law when it did not make any changes, the government's knowledge that it would not make any changes satisfies this element. Accordingly, the Court will find for Plaintiffs on this element.

   2.  *Intent to induce reliance or actions giving rise to a belief in that intent*

The primary consideration for this element is whether the defendant engaged in conduct with the intent of getting the plaintiff to believe that it did not need to bring an action because the defendant would ameliorate any issue the plaintiff had. *See generally Watkins v. U.S. Army*, 875 F.2d 699, 710 (9th Cir. 1989). Here, Plaintiffs cannot show that the government took actions with the intent to induce reliance. Plaintiffs allege that the government made promises to them intentionally to make Plaintiffs rely on the government while addressing Plaintiffs' safety concerns. These promises included statements that the government made at public meetings and informal conversations with Plaintiffs. (ECF No. 54 at 3). Additionally, Plaintiffs allege that the government promised "to provide a courtesy copy of any governmental notice or action item directly to Plaintiff[.]" (ECF No. 54 at 5) ("Plaintiffs relied on that promise to their detriment"). According to Plaintiffs, the government delayed performance on these promises "to stall and run the clock on the statute of limitations." (ECF No. 45 at 14).

Plaintiffs argue that the government's promises and delay constituted "stonewalling"

1  akin to the police department in *Estate of Amaro*. However, the government's actions share no
2  similarities to the police department's in that case. The government never withheld nonpublic
3  information from Plaintiffs, as the police department in *Estate of Amaro* did. *Estate of Amaro*,
4  653 F.3d at 814. Rather, the government failed to provide a publicly available copy of the
5  FONSI. Moreover, the government did not take any actions to prevent Plaintiffs from finding the
6  publicly available document, but, in *Estate of Amaro*, the police department denied the mother's
7  requests to view the documents. *Id*. Without a question, the government's promise to furnish the
8  final agency action did not induce reliance that prevented Plaintiffs from bringing the action.

9  Further, the government's promises to address Plaintiffs' safety concerns did not induce
10 reliance that prevented Plaintiffs from bringing an action. The government did not promise to
11 solve Plaintiffs' safety concerns to induce reliance and make Plaintiffs forgo litigation. Instead,
12 as Plaintiffs allege, "the federal government affirmatively promised both Plaintiffs and the TRPA
13 that it would **consider** [Plaintiffs'] safety concerns." (ECF No. 54 at 14) (emphasis added).
14 Reading that with the required deference to Plaintiffs, the government did nothing more than
15 promise it would consider Plaintiffs' safety concerns; it did not promise to solve them. If the
16 government had promised to solve the safety concerns, the government's promise likely would
17 have induced Plaintiffs to rely on the government and forgo litigation. That is simply not the case
18 here. For these reasons, the Court finds that the government did not take actions inducing
19 Plaintiffs to rely on the government and forgo litigation.

20    3. *Ignorance of the true facts*

21    The third element rests on the "ignorance of the true facts by the relying party." *Estate of*
22 *Amaro*, 653 F.3d at 813 (quotation omitted). The focus of this element "is not whether the plaintiff
23 knew she had a cause of action—or even pursued some other form of litigation based on that
24 knowledge—but whether the defendant's fraudulent concealment or misrepresentation deprived

the plaintiff of a full understanding of the true facts, and thus, dissuaded the plaintiff from filing the claim at issue within the limitations period." *Id*. Essentially, this element asks whether the government fraudulently concealed or misrepresented information that deprived Plaintiffs from the necessary knowledge to bring their action.

Plaintiffs argue that the government concealed the FONSI, causing Plaintiffs to lack the knowledge necessary to bring this action. The government correctly argues that Plaintiffs had access to the FONSI because it is a publicly available document posted on the Federal Register. The government failing to provide the FONSI to Plaintiffs did not prevent them from accessing it through a search on the Federal Register. There is no question that Plaintiffs had access to the FONSI. For these reasons, the Court finds that Plaintiffs were not ignorant to the true facts because the government did not conceal or misrepresent information regarding the FONSI.

4. *Detrimental reliance*

Plaintiffs' must show that their reliance was reasonable to establish that they relied on the defendant's misrepresentations to their own detriment. *Estate of Amaro*, 653 F.3d at 813; *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) ("reasonable reliance" required); *Stitt*, 919 F.2d at 522. Plaintiffs allege that they relied on the promises the government made at the TRPA hearing to their own detriment. The government never promised to solve Plaintiffs' safety concerns and it was not reasonable for Plaintiffs to believe that the government would do so. Accordingly, Plaintiffs cannot prove that they relied on the government's promises to their own detriment because the reliance was not reasonable.

5. *Affirmative misrepresentation or concealment*

Plaintiffs must show "an affirmative misrepresentation or affirmative concealment of a material fact by the government." *Bolt*, 944 F.2d at 609 (citation omitted). The Ninth Circuit has defined affirmative misconduct as a "deliberate lie" or a "pattern of false promises." *Socop-*

1  *Gonzalez v. I.N.S.*, 272 F.3d 1176, 1184 (9th Cir. 2001). "Neither the failure to inform an individual of his or her legal rights nor the negligent provision of misinformation constitute affirmative misconduct." *Sulit v. Schiltgen*, 213 F.3d 449, 454 (9th Cir. 2000).

Plaintiffs' allegations of affirmative misconduct center around a promise that the government allegedly made to address the project's safety concerns. Plaintiffs argue that the government engaged in "long-running, deliberate, and intentional misrepresentations" and made "bad-faith statements and promises" as to working with Plaintiffs to address their safety concerns. (ECF No. 54 at 15). According to Plaintiffs, the government made misrepresentations to "run [out] the clock" on the FONSI's statute of limitations. (ECF No. 45 at 17). Among these alleged misrepresentations was a promise to provide Plaintiffs with a copy of the FONSI. (ECF No. 54 at 14). Plaintiffs argue that the failure to provide a copy resulted in Plaintiffs' lack of knowledge of the FONSI's statute of limitations (150 days). (*Id.*)

However, even if the government meant to withhold the FONSI, that action does not constitute an affirmative misrepresentation or an affirmative concealment of a material fact. The government did not misrepresent whether the FONSI existed, the government did not misrepresent its ability to provide the FONSI, and the government did not make any misrepresentations regarding the FONSI. Further, as discussed previously, the government did not conceal the FONSI from Plaintiffs because it was available online. The government did not make an affirmative misrepresentation regarding the FONSI nor did the government conceal it from Plaintiffs.

Furthermore, the government did not make a misrepresentation or conceal a material fact regarding its commitment to considering Plaintiffs' safety concerns. The government stated that it would consider Plaintiffs' safety concerns and Plaintiffs did not plead any facts showing that the government did not at least consider the safety concerns. Therefore, the government did not a

misrepresentation as to the consideration of Plaintiffs' safety concerns. Nor did Plaintiffs plead any facts showing that the government concealed a material fact as to their consideration of Plaintiffs' safety concerns. Accordingly, taking the allegations as true and reading them in a light most favorable to Plaintiffs, the government did not make an affirmative misrepresentation or conceal a material fact.

6. *Serious injustice outweighing the damage to the public interest*

Neither party has persuaded the Court on this element. The government argues that the project will reduce crashes by 11.5%, but Plaintiff argues that it will result in an unsafe roadway for the private driveway, which would presumably increase accidents. It is unclear which party is correct given the stage of litigation. Regardless, under the Fed. R. Civ. P. 12(b)(6) standard, the Court takes all material allegations as true and construes them in the light most favorable to the plaintiff. *See NL Indus., Inc.*, 792 F.2d at 898. Reading Plaintiffs' allegations in that light, the Court finds that an injustice may outweigh the damage to the public interest, but only slightly. The Court will not find for either party on this element.

7. *Conclusion*

Plaintiffs did not plead facts that give rise to a legal claim under the element of equitable estoppel. Plaintiffs have unsuccessfully showed that the government's actions "dissuaded the [P]laintiff from filing the claim at issue within the limitations period." *Estate of Amaro*, 653 F.3d at 813.

**C. Equitable Tolling**

Plaintiffs did not establish an equitable tolling claim because Plaintiffs did not pursue their rights diligently or show that an extraordinary circumstance stood in the way of bringing an action. "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

circumstances stood in his way." *Kwai Fun Wong*, 732 F.3d at 1030 (quoting *Credit Suisse Sec. (USA) LLC v. Simmonds*, 566 U.S. 221, 227 (2012)). Equitable tolling is rarely granted because litigants must show that "they are unable to file timely [documents] as a result of external circumstances beyond their direct control." *Id*.

Plaintiffs did not pursue their rights diligently. Regarding the first element, "diligence does not require an overzealous or extreme pursuit of any and every avenue of relief. It requires the effort that a reasonable person might be expected to deliver under his or her particular circumstances." *Kwai Fun Wong*, 732 F.3d at 1052 (citation omitted). Courts in this Circuit look at whether plaintiffs are "without any fault" in pursuing their claim. *Id*. Equitable tolling is not available to avoid the consequences of one's negligence. *Lehman v. United States*, 154 F.3d 1010, 1016 (9th Cir. 1998).

Without a showing of diligence, Plaintiffs try to argue that they are entitled to equitable tolling because they did not possess "vital information bearing on the existence of [its] claim." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) (citation omitted). However, the information that Plaintiffs needed was the FONSI, a document available to the public. Regardless of the government's promise to furnish the FONSI, Plaintiffs could freely obtain the vital information for their claim.

No extraordinary circumstance prevented Plaintiffs from bringing an action before the deadline to file passed. The second element requires a showing of extraordinary circumstances that caused the untimeliness and made it impossible to file the document in time. *Kwai Fun Wong*, 732 F.3d at 1052. Plaintiffs did not identify an extraordinary circumstance that prevented them from filing before the deadline. In fact, nothing stopped Plaintiffs from filing an action.

The Court will not toll the statute of limitations on Plaintiffs' NEPA claim because Plaintiffs cannot establish a valid legal claim for equitable estoppel or tolling. Simply put, the

government did not inhibit Plaintiffs' ability to file an action before the deadline to file.

### D. Waiver of Statute of Limitations Defense

The government did not waive the statute of limitations defense. Plaintiffs' arguments on this point are unclear and do not align with the Federal Rules of Civil Procedure. Plaintiffs argue that the federal rules required the government to object to Plaintiffs' request to amend the complaint. Failing to do so, Plaintiffs allege, makes the Motion to Dismiss for lack of subject matter jurisdiction, and now failure to state a claim, invalid under Fed. R. Civ. P. 12(h). Plaintiffs cannot point to any legal precedent or Federal Rule of Civil Procedure for this argument. The Court will not create a rule out of thin air because the government allowed Plaintiffs to amend their complaint.

Finally, Plaintiffs allege that the government did not timely raise the statute of limitations defense. Defendants waive affirmative defenses if they are not timely or correctly pled. Fed. R. Civ. P. 12(h); Fed. R. Civ. P. 8; *but see Rodriguez v. Williams*, 447 F. App'x 850, 851 (9th Cir. 2011) ("The district court did not abuse its discretion in allowing defendants to amend their answer to add a statute of limitations defense because defendants notified [plaintiff] of their intent to raise the defense early on, and [plaintiff] was not prejudiced by the amendment."). Defendants must raise the affirmative defenses under Fed. R. Civ. P. 12(b) "before pleading if a responsive pleading is allowed." The defenses may be waived if defendants raise a Rule 12(b) defense after raising another Rule 12(b) defense, do not make the raise the defense in motion form, or fail to include the defense in a responsive pleading. Fed. R. Civ. P. 12(h). The government did not do anything to waive the defense under Fed. R. Civ. P. 12. The government filed the defense before the pleading. The government raised only the statute of limitations defense and no other Rule 12(B) defense. The government raised the defense in a motion to dismiss. Finally, the government did not make a responsive pleading to the Amended Complaint

before raising this defense. Accordingly, the government did not waive the statute of limitations defense.

## CONCLUSION

IT IS HEREBY ORDERED that the government's Motion to Dismiss (ECF No. 50) is **GRANTED**.

The Clerk of Court is directed to enter judgment accordingly and close this case.

IT IS SO ORDERED.

Dated this 14TH day of February 2023.

_____
ROBERT C. JONES
United States District Judge